UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JENNIFER SMITH,                              :     **<u>ECF CASE</u>**
                                             :
                    Plaintiff,               :
                                             :     Case No. 11 CV 6368-JBW-JO
          v.                                 :
                                             :
BANK OF AMERICA CORP., and BANK OF           :
AMERICA, N.A.,                               :
                                             :
                    Defendants.              :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT

Philip A. Goldstein (PAG-0908)
*pagoldstein@mcguirewoods.com*
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100

Counsel for Defendants

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

    A.    Plaintiff Is Arrested For Petit Larceny But Avoids Conviction Through An
Adjournment In Contemplation Of Dismissal. ...................................................... 2

    B.    The Bank Offers Plaintiff A Full-Time Position But Then Rescinds It
After Receiving The Results Of An FBI Background Check On Her. ................... 3

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ...................................................................................................... 5

    I.    PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM
FOR VIOLATION OF NYHRL § 296(15) BECAUSE SHE HAS NEVER
BEEN CONVICTED OF A CRIME ................................................................ 5

    II.    PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM
FOR VIOLATION OF NYHRL § 296(16) BECAUSE THE BANK WAS
"SPECIFICALLY REQUIRED OR PERMITTED BY STATUTE" TO
TAKE ADVERSE EMPLOYMENT ACTION AGAINST HER BASED
UPON HER ARREST FOR A CRIME OF DISHONESTY ............................. 7

        A.    As A National Bank Whose Depositors Are Insured By The FDIC,
BANA Is Governed By The Federal Deposit Insurance Act. .................... 8

        B.    The FDIA "Specifically Required Or Permitted" The Bank To
Rescind Its Employment Offer To Plaintiff. ............................................. 8

            1.    Plaintiff Was Arrested For And Charged With A Crime Of
Dishonesty ..................................................................................... 9

            2.    An ACD Pursuant To NYCLR § 170.55 Is A "Pretrial
Diversion Or Similar Program" Within The Meaning Of
Section 19 ...................................................................................... 10

    III.    PLAINTIFF'S CLAIMS FOR RELIEF UNDER THE NYHRL ARE
PREEMPTED BY FEDERAL LAW ............................................................... 12

        A.    Governing Preemption Principles. ........................................................... 12

        B.    NYHRL §§ 296(15) And 296(16) Conflict With Section 19 Of The
FDIA. ...................................................................................................... 13

    IV.    EVEN IF PLAINTIFF COULD SOMEHOW STATE A COGNIZABLE
CLAIM FOR INDIVIDUAL RELIEF, THE CLASS ALLEGATIONS
SHOULD BE DISMISSED AND/OR STRICKEN BECAUSE
PLAINTIFF HAS FAILED TO PLEAD A CLAIM FOR CLASS-WIDE
RELIEF ......................................................................................................... 15

A.      There Is No Reasonable Possibility That Plaintiff Can Satisfy The Elements Of Rule 23 ............................................................................................ 16

      1.     No Commonality Exists As A Matter Of Law ............................ 16

      2.     Plaintiff Has Failed to Plead an Ascertainable Class. ................. 18

B.      The Class Allegations Fail To Satisfy Fed. R. Civ. P. 8 ......................... 19

CONCLUSION ...................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allah v. City of New York Department of Parks & Recreation*,
  162 F. Supp. 2d 270 (S.D.N.Y. 2001), *aff'd*, 47 Fed. Appx. 45 (2d Cir. 2002) ......................6

*Allee v. Medrano*,
  416 U.S. 802 (1974)..................................................................................................................7

*Barnett Bank of Marion County, N.A. v. Nelson*,
  517 U.S. 25 (1996)..............................................................................................................13, 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................4, 5, 19, 20, 21, 22

*Bostick v. St. Jude Med., Inc.*,
  2004 U.S. Dist. LEXIS 29997 (W.D. Tenn. 2004)................................................................18

*Brass v. Am. Film. Techs, Inc.*,
  987 F.2d 142 (2d Cir. 1993).................................................................................................3, 5

*Central States Southeast Areas Health and Welfare Fund v. Merck-Medco Managed
  Care, LLC*,
  433 F.3d 181 (2d Cir. 2005)...................................................................................................7

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).................................................................................................3, 5

*Colabella v. AICPA*,
  2011 U.S. Dist. LEXIS 110982 (E.D.N.Y. 2011)............................................................21, 22

*De La Cruz v. Gill Corn Farms, Inc.*,
  2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. 2005) ....................................................................18

*Deleon v. Time Warner Cable, LLC*,
  2009 U.S. Dist. LEXIS 74345 (C.D. Cal. 2009)....................................................................19

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)....................................................................................................5

*Ferrante v. Am. Lung Ass'n*,
  90 N.Y.2d 623 (2007) ............................................................................................................17

*Fieck v. Fleener*,
  653 F.2d 69 (2d Cir. 1981)..................................................................................................5, 22

*Franklin National Bank of Franklin Square v. New York*,
  347 U.S. 373 (1954)....................................................................................13, 15

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010)...........................................................................5

*Kenro, Inc. v. Fax Daily, Inc.*,
  962 F.Supp. 1162 (S.D. Ind. 1997) ...............................................................18

*McDonnell Douglas v. Green*,
  411 U.S. 792 (1973)......................................................................................17

*Meyers v. Crouse Health Sys.*,
  274 F.R.D. 404 (N.D.N.Y. 2011)...................................................................8

*Pac. Cap. Bank, N.A. v. State of Connecticut*,
  542 F.3d 341 (2d Cir. 2008).......................................................12, 13, 14, 15

*People v. Hunter*,
  180 A.D.2d 752 (2d Dept. 1992) ..................................................................10

*Rice v. Norman Williams Co.*,
  458 U.S. 654 (1982)......................................................................................13

*Ruffin v. Dep't of Corr. Servs.*,
  701 F. Supp. 2d 385 (E.D.N.Y. 2010) ........................................................3, 5

*Sells-Lawrence v. Chase Manhattan Bank, N.A.*,
  2002 U.S. Dist. LEXIS 4346 (D. V.I. 2002)................................................15

*The Mazza Consulting Group, Inc. v. Canam Steel Corp.*,
  2008 U.S. Dist. LEXIS 32670 (E.D.N.Y. 2008).........................................5

*United States v. Sliker*,
  751 F.2d 477 (1984)...................................................................................8, 16

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011)...................................................................................16

*Zhong v. August August Corp.*,
  498 F.Supp.2d 625 (S.D.N.Y. 2007)............................................................20

## STATUTES

12 U.S.C. § 1812(c)(2)....................................................................................8

12 U.S.C. § 1813(u) ........................................................................................8

12 U.S.C. § 1829(a) ................................................................................8, 9, 13

12 U.S.C. § 1829(b) ...................................................................................9, 14

12 U.S.C. §5104(b)(2) ........................................................................................19

12 U.S.C. § 24 ....................................................................................................19

NEW YORK CRIM. PROC. LAW § 160.50 ..........................................................7, 14

NEW YORK CRIM. PROC. LAW § 170.55 ......................................................_passim_

NEW YORK PENAL LAW § 155.25 ......................................................................10

**OTHER AUTHORITIES**

28 C.F.R. § 50.12 ...............................................................................................1, 4

63 Fed. Reg. 66,177 (Dec. 1. 1998) ...................................................................10

72 Fed. Reg. 73,823 (Dec. 28, 2007) .................................................................10

76 Fed. Reg. 28,031 (May 13, 2011) ..................................................................10

5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 23.21[1] (2001) ...............18

FED. R. EVID. 201 ..................................................................................................8

FED. R. CIV. P. 8 ..................................................................................2, 15, 19, 20

FED. R. CIV. P. 12 ...............................................................................................19

FED. R. CIV. P. 23 ............................................................................................_passim_

## PRELIMINARY STATEMENT

Plaintiff is a former temporary employee of Defendant Bank of America, N.A. ("BANA" or the "Bank").  The Bank revoked a full-time job offer it had made to her after an FBI background check on her it requested pursuant to 28 C.F.R. § 50.12, as the Bank is required to do under Section 19 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1829, revealed that Plaintiff recently had been charged with Petit Larceny.  Plaintiff alleges that, in revoking her job offer, the Bank violated the New York State Human Rights Law ("NYHRL"), NY CLS Exec. § 290, *et seq.*  She has filed this putative class action lawsuit alleging that the Bank unlawfully discriminated against her, and that it has illegal policies and practices to discriminate against applicants and employees by refusing to hire or terminating them based on their (1) arrest records, and (2) criminal conviction history.  But, as we discuss below, Plaintiff has failed to state a claim under the NYHRL, her claims are preempted by federal law and therefore barred, and, to the extent she can state any claim, she cannot state a claim for class-wide relief.

First, the Complaint fails to state a claim with regard to any purported illegal discrimination based upon having been convicted of a crime because Plaintiff does not allege that she was ever convicted of any crime.  To the contrary, the Complaint specifically alleges that Plaintiff has *never* been convicted of a crime.

Second, the Complaint fails to state a claim with regard to any purported illegal discrimination based on Plaintiff's arrest record because the relevant statute, NYHRL § 296(16), specifically allows for employers to rely upon arrest records in making employment decisions when "specifically required or permitted by statute."  As an FDIC-insured national bank, the Bank is "specifically required or permitted" by the FDIA to not hire people (or to terminate employees) who have been arrested for or charged with crimes of dishonesty.

Third, even if Plaintiff could possibly state a claim for relief under the NYHRL, her

1

claims nevertheless fail because any such purported claims are wholly preempted by federal law. As an FDIC-insured, nationally-chartered Bank, BANA is governed by the FDIA, which provides specific regulations concerning whom it may or may not hire. The relevant provisions of the NYHRL purporting to prohibit BANA from relying on arrest records or criminal convictions in making employment decisions directly conflict with the FDIA. Accordingly, under well-established principles of federalism and preemption, the NYHRL is preempted to the extent it imposes conflicting limitations or obligations on the Bank than those imposed by the FDIA.

Finally, to the extent Plaintiff can somehow state an individual claim for relief, her putative class-wide claims nevertheless must be stricken and/or dismissed. The allegations of the Complaint and the nature of Plaintiff's claims conclusively establish that Plaintiff cannot satisfy the essential elements of FED. R. CIV. P. 23. Moreover, Plaintiff's putative class allegations fail to satisfy FED. R. CIV. P. 8.

Accordingly, the Court should grant the Bank's motion, and dismiss the Complaint with prejudice.

## **STATEMENT OF FACTS**

### A.    **Plaintiff Is Arrested For Petit Larceny But Avoids Conviction Through An Adjournment In Contemplation Of Dismissal.**

Plaintiff worked for the Bank in Melville, New York as a temporary employee from February 2009 through September 2011. (Compl., ¶ 36). In April 2010, just about half-way through Plaintiff's tenure as a temporary employee of the Bank, she was arrested for shoplifting and charged with Petit Larceny. (Compl., ¶¶ 40, 47). Plaintiff's Petit Larceny charge was eventually dismissed and she avoided conviction pursuant to an "adjournment in contemplation of dismissal ('ACD')" on July 21, 2011. (Compl., ¶ 41; *see also* Declaration of Lori McCarthy-

Lopez ["McCarthy-Lopez Decl."], Exh. 1, pp. 2 and 3).  New York's ACD program is governed by NEW YORK CRIM. PROC. LAW ("NYCPL") § 170.55.  *See generally* NYCPL § 170.55; *see also* McCarthy-Lopez Decl., Exh. 1, p. 3) (state court "Certificate of Disposition," showing that the charge against Plaintiff was "dismissed after adjournment under CPL Section 170.55").[1]  An ACD is "an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice."  NYCPL § 170.55(2).

Plaintiff does not allege that she informed anyone at the Bank about her arrest when it occurred in April 2010, when she agreed to the ACD program in January 2011, or when the prosecution was eventually dismissed in July 2011.  Rather, she first notified her supervisor of her arrest in or about September 2011 when she applied for a full-time position with the Bank. (Compl., ¶¶ 39-43).

**B.     The Bank Offers Plaintiff A Full-Time Position But Then Rescinds It After Receiving The Results Of An FBI Background Check On Her.**

On September 9, 2011, the Bank offered Plaintiff a position as a full-time employee. (Compl, ¶¶ 10, 42-44).  That offer, however, was contingent upon the results of a criminal background check.  *See* McCarthy-Lopez Decl., Exh. 4 ("When you applied for employment with Bank of America, you consented to an investigation of your background, including your

---

[1] Paragraph 49 of the Complaint specifically alleges that Plaintiff provided the Bank with "documentation of the dismissal and correspondence from her attorney concerning the disposition of the charge."  But a copy of this documentation was not attached to the Complaint.  BANA submits herewith a copy of the referenced documentation.  *See* Declaration of Lori McCarthy-Lopez, Exh. 1.  Because Plaintiff's Complaint specifically references and relies upon these documents, the Court may properly consider them in ruling on the Bank's Rule 12(b)(6) motion to dismiss.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (documents referenced in and relied upon in drafting the complaint may properly be considered in ruling on a Rule 12(b)(6) motion).  Moreover, this Court may take judicial notice of the state court Certificate of Disposition.  *See Ruffin v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 390 n.2 (E.D.N.Y. 2010) (judicial notice may be taken of documents in court files) (collecting cases); *Brass v. Am. Film. Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (court may properly consider "matters of which judicial notice may be taken" in ruling on a Rule 12(b)(6) motion).

criminal record").[2]   Federal law provides for the Federal Bureau of Investigation to conduct background checks for "federally chartered or insured banking institutions."   28 C.F.R. § 50.12(a).   The FBI provided the Bank with Plaintiff's "Criminal History Record," which disclosed her arrest for Petit Larceny.  (Compl., ¶ 47).  The Bank, in turn, provided Plaintiff a copy of the FBI Criminal History Record, and informed her that "based on information obtained from [her] fingerprint report," it was "unable to consider her for employment."  (Compl., ¶¶ 46-47; *see also* McCarthy-Lopez Decl., Exh. 4).  Shortly thereafter, Plaintiff sent the Bank a letter from her criminal attorney, along with a copy of the Certificate of Disposition indicating that the charge of Petit Larceny against her had been dismissed pursuant to NYCPL § 170.55.[3]  (Compl., ¶ 49; *see also* McCarthy-Lopez Decl., Exh. 1).   On September 27, 2011, the Bank informed Plaintiff that it already was aware that the charge of Petit Larceny against her had been dismissed pursuant to an ACD under NYCPL § 170.55, and that it would not consider her appeal of its decision not to hire her.  (Compl, ¶ 50; *see also* McCarthy-Lopez Decl., Exh. 5).

## LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of claims when the complaint "fails to state a claim upon which relief can be granted."   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcoft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual

---

[2] Plaintiff's Complaint quotes from this letter.  (Compl., ¶ 46).  This Court may therefore consider this letter in deciding this Rule 12(b)(6) motion.  *See Chambers*, *supra*, 282 F.3d at 152-53.

[3] Plaintiff appears to allege that she sent this letter from her criminal attorney to the Bank after September 16.   (Compl., ¶ 49).   However, the letter itself is dated September 15.  *See* McCarthy-Lopez Decl., Exh. 1.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Well-pleaded factual allegations are presumed true and viewed in the plaintiff's favor. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). But this requirement does not apply to "legal conclusions," "bare assertions," or "bald allegations," which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 1950, 1951. Similarly, factual allegations that contradict documents specifically referenced and relied upon in the complaint are not entitled to the assumption of truth. *See Fieck v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981); *The Mazza Consulting Group, Inc. v. Canam Steel Corp.*, 2008 U.S. Dist. LEXIS 32670, *3 (E.D.N.Y. 2008) ("If the documents referenced in the complaint contradict the facts alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations") (citing *Fieck*, 653 F.2d at 75 & n.4).

Matters of which judicial notice may be taken, such as documents filed in other courts and other public records, as well as documents specifically referenced and relied upon in the complaint, even if not attached as exhibits, may also be considered in deciding a Rule 12(b)(6) motion. *See Brass v. Am. Film. Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (judicially noticed documents); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (documents referenced in and relied upon in the complaint); *Ruffin v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 390 n.2 (E.D.N.Y. 2010) (documents in court files).

**ARGUMENT**

I. **PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM FOR VIOLATION OF NYHRL § 296(15) BECAUSE SHE HAS NEVER BEEN CONVICTED OF A CRIME**

Plaintiff has not stated and cannot state a claim upon which relief can be granted under NYHRL § 296(15) because she has not alleged that she was convicted of a crime, or that the Bank's revocation of her job offer was based on a conviction.

As an initial matter, the Complaint purports to seek relief for alleged violations of the NYHRL, but it does not cite any specific section of the NYHRL that the Bank allegedly violated. Based on the allegations of the Complaint, however, it appears that Plaintiff is relying on NYHRL § 296(15), which purports to make it an "unlawful discriminatory practice to deny … employment to any individual by reason of his or her having been convicted of one or more criminal offenses, or by reason of a finding of a lack of 'good moral character' which is based upon his or her having been convicted of one or more criminal offenses, when such denial is in violation of the provisions of article twenty-three-A of the correction law …"  *See generally* Compl., ¶¶ 3, 20.

Assuming that Plaintiff is attempting to pursue a claim pursuant to NYHRL § 296(15), she has failed to state a claim for relief under this section.   Plaintiff specifically alleges that she was *not* convicted of the April 2010 charge of Petit Larceny.  (Compl., ¶¶ 41, 49).  Plaintiff further alleges that Bank of America *knew* at the time it rescinded her employment offer that Plaintiff had *never* been convicted of any criminal offense.  (Compl., ¶ 47).  Simply stated, because Plaintiff has never been convicted of a criminal offense, she cannot plausibly allege that the Bank discriminated against her because of a criminal conviction.  *See Allah v. City of New York Department of Parks & Recreation*, 162 F. Supp. 2d 270, (S.D.N.Y. 2001), *aff'd*, 47 Fed. Appx. 45 (2d Cir. 2002) (NYHRL § 296(15) claim failed as a matter of law because "at the time

6

the Parks Department employed him, [plaintiff] had no criminal record").[4]  Therefore, this claim

must be dismissed.

**II.    PLAINTIFF HAS NOT STATED AND CANNOT STATE A CLAIM FOR VIOLATION OF NYHRL § 296(16) BECAUSE THE BANK WAS "SPECIFICALLY REQUIRED OR PERMITTED BY STATUTE" TO TAKE ADVERSE EMPLOYMENT ACTION AGAINST HER BASED UPON HER ARREST FOR A CRIME OF DISHONESTY**

To the extent Plaintiff purports to assert a claim under NYHRL § 296(16), this claim

must be dismissed because the Bank is "specifically required or permitted by statute" to engage

in precisely the conduct that Plaintiff now alleges is illegal.

As discussed above, the Complaint does not cite any specific section of the NYHRL that

the Bank allegedly violated.  But the allegations of the Complaint suggest that, in addition to

NYHRL § 296(15), Plaintiff is relying on NYHRL § 296(16) as well.  *See* Complt., ¶ 3 (alleging

that the NYHRL prohibits an employer "from taking an adverse action upon an applicant or

employee who [] has been arrested, if prior to the adverse decision all charges were terminated in

his or her favor …").

NYHRL § 296(16) provides, in pertinent part:

> It shall be an unlawful discriminatory practice, ***unless specifically required or permitted by statute,*** for any … corporation … to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law.

---

[4] Plaintiff likewise lacks standing, and could never serve as an appropriate, adequate, or typical class representative, for the purported NYHRL § 296(15) class claim.  *See*, *e.g.*, *Central States Southeast Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) ("A named plaintiff cannot acquire standing to sue by bringing [her] action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which [s]he does not share.  Standing cannot be acquired through the back door of a class action") (quoting *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., concurring in the result in part and dissenting in part)).

NY CLS Exec § 296(16) (emph. added). Assuming Plaintiff is relying upon NYHRL § 296(16), she cannot state a claim upon which relief can be granted because the Bank was "specifically required or permitted by statute" to act upon her arrest record and criminal accusation, even though the criminal proceeding eventually terminated in her favor.

**A.    As A National Bank Whose Depositors Are Insured By The FDIC, BANA Is Governed By The Federal Deposit Insurance Act.**

BANA is a nationally chartered bank. (Compl., ¶ 12). Its depositors are insured by the FDIC, and have been since 1934. *See* McCarthy-Lopez Decl., Exhs. 2 and 3.[5] BANA was therefore an "insured depository institution" as defined by the Federal Deposit Insurance Act at the time Plaintiff sought permanent employment with the Bank in September 2011. *See* 12 U.S.C. § 1812(c)(2) ("The term "insured depository institution' means any bank … the deposits of which are insured by the Corporation [FDIC] pursuant to this Act"). Thus, when Plaintiff applied for employment with BANA, she sought to become an "institution-affiliated party" as defined by the FDIA. *See* 12 U.S.C. § 1813(u) ("The term 'institution-affiliated party' means ... any employee … of … an insured depository institution").

**B.    The FDIA "Specifically Required Or Permitted" The Bank To Rescind Its Employment Offer To Plaintiff.**

A myriad of federal laws and regulations govern national and FDIC-insured banks, including Section 19 of the FDIA, 12 U.S.C. § 1829 ("Section 19"). Section 19 ***prohibits*** an FDIC-insured bank from hiring or employing anyone who has been convicted of a "criminal

---

[5] Exhibit 2 to the Declaration of Lori McCarthy-Lopez contains printouts of information from the FDIC's web site (www.fdic.gov) relating to BANA. These FDIC records confirm that BANA is a national bank, is FDIC-insured (and has been since January 1, 1934), and has been issued FDIC Certificate No. 3510. Exhibit 3 to the Declaration of Lori McCarthy-Lopez is a copy of Bank of America's FDIC Certificate. This Court may take judicial notice of these documents and the fact that Bank of America is an FDIC-insured institution. FED. R. EVID. 201(b); *see United States v. Sliker*, 751 F.2d 477, 485 (2d Cir. 1984) (recognizing "the common knowledge that of the nearly universal prevalence of the banks of the United States having their deposits insured by the Federal Deposit Insurance Corporation") (citation omitted).

offense involving dishonesty," or who has been charged with a crime involving dishonesty who "has agreed to enter into a pretrial diversion or similar program in connection with a prosecution," without the prior written consent of the FDIC.  12 U.S.C. § 1829(a)(1).  Knowing violations of Section 19 are punishable by a fine of up to *$1 million per day* and/or up to five years in prison.  *See* 12 U.S.C. § 1829(b).[6]  As we discuss next, Plaintiff was arrested for and charged with a crime of dishonesty, and the dismissal of that charge was in connection with a "pretrial diversion or similar program."  Accordingly, under the FDIA, the Bank was "specifically required or permitted" to rescind the job offer to Plaintiff, and, in turn, the Bank did not violate the NYHRL.

> **1.  Plaintiff Was Arrested For And Charged With A Crime Of Dishonesty.**

Plaintiff admits that "she had been charged with shoplifting," which the prosecution charged as "Petit Larceny."  (Compl., ¶¶ 40, 47).  "A person is guilty of petit larceny when [s]he

---

[6] Section 19 provides in pertinent part:

(a)      Prohibition
    (1)      In general.  Except with the prior written consent of the Corporation --
        (A)      any person who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not --
            (i)      become, or continue as, an institution-affiliated party with respect to any insured depository institution; [or]
                ***
            (iii)      otherwise participate, directly or indirectly, in the conduct of the affairs of any insured depository institution; and
        (B)      any insured depository institution may not permit any person referred to in subparagraph (A) to engage in any conduct or continue any relationship prohibited under such subparagraph.

(b)      Penalty
Whoever knowingly violates subsection (a) of this section shall be fined not more than $1,000,000 for each day such prohibition is violated or imprisoned for not more than 5 years, or both.

12 U.S.C. § 1829(a).

steals property."  NEW YORK PENAL LAW § 155.25; McCarthy-Lopez Decl., Exh. 1, p. 3 (state

court Certificate of Disposition showing that Plaintiff was charged with Petit Larceny pursuant to

NYPL § 155.25).  As a matter of both logic and law, Petit Larceny is a crime of dishonesty.  *See,*

*e.g.*, 63 Fed. Reg. 66,177, 66,185 (Dec. 1. 1998) ("'Dishonesty' means … wrongfully take

properly belonging to another in violation of any criminal statute");[7] *People v. Hunter*, 180

A.D.2d 752, 752 (2d Dept. 1992) ("petit larceny [is] a crime involving individual dishonesty")

(citing, *inter alia*, *People v. Sandoval*, 34 N.Y.2d 371, 375 (1974)).

### 2.    An ACD Pursuant To NYCLR § 170.55 Is A "Pretrial Diversion Or Similar Program" Within The Meaning Of Section 19.

While the FDIA does not specifically define "pretrial diversion or similar program," the

FDIC's Section 19 Statement of Policy explains that qualifying programs are "characterized by a

suspension or eventual dismissal of charges or criminal prosecution upon agreement by the

accused to treatment, rehabilitation, restitution, or other noncriminal or nonpunitive alternatives."

63 Fed. Reg. at 66,184-85.  New York's ACD program pursuant to NYCPL § 170.55 fits

squarely within this definition.

*First*, ACDs are characterized by both an initial suspension and "a view to" the eventual

dismissal of the charges.  *See* NYCPL § 170.55(2) ("An adjournment in contemplation of

dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal

of the accusatory instrument in furtherance of justice").

---

[7] Titled "Statement of Policy Pursuant to Section 19 of the Federal Deposit Insurance Act Concerning Participation in the Conduct of the Affairs of an Insured Institution by Persons Who Have Been Convicted of Crimes Involving Dishonesty, Breach of Trust, or Money Laundering or Who Have Entered Pretrial Diversion Programs For Such Offenses," the FDIC issued this Statement of Policy after a formal notice and comment period.  The FDIC has twice modified this Statement of Policy in ways immaterial to this case.  *See* 76 Fed. Reg. 28,031 (May 13, 2011); 72 Fed. Reg. 73,823 (Dec. 28, 2007). This brief will refer to this FDIC Statement of Policy as "FDIC Section 19 Statement of Policy."

*Second*, ACDs are agreed upon by the accused.  *See* NYCPL § 170.55(1) ("... the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, or that the action be 'adjourned in contemplation of dismissal' …").

*Third*, ACDs are conditioned upon non-criminal or non-punitive alternatives.  The defendant is released on her own recognizance and the prosecution is dismissed six months later, unless the court determines that "dismissal of the accusatory instrument would not be in furtherance of justice" – *i.e.*, the defendant is re-arrested.  NYCPL § 170.55(2).  Thus, as a practical matter, an ACD is conditioned on the defendant staying out of further trouble during the six month ACD period.  The ACD program also provides for a number of additional non-punitive alternatives to criminal punishment.  The court may condition dismissal on the defendant participating in dispute resolution and complying with any dispute resolution award.  NYCPL § 170.55(5).  An ACD may also be conditioned on the defendant's agreement to performing public service.  NYCPL § 170.55(6).  And defendants accused of domestic-related crimes and youth defendants accused of alcohol crimes may be required to attend counseling as a condition of an ACD.  NYCPL § 170.55 (4), (7).

*Finally,* the FDIC itself previously has determined that an ACD pursuant to NYCPL § 170.55—like Plaintiff's here—is a "pretrial diversion or similar program" within the meaning of Section 19:

> New York's ACD program contemplates "an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice.  N.Y. Crim. Proc. Law § 170.55(2).  The ACD program has characteristics of a pretrial diversion program.  It provides for various non-punitive alternatives to punishment under the criminal justice system and provides that an ACD shall be ordered prior to the entry of a plea and not be deemed to be a conviction or admission of guilt.  **The granting of an ACD constitutes entry**

**into a pretrial diversion or similar program within the meaning of Section 19**.

(Exh. B, FDIC Opinion Letter dated 5/13/09) (emphasis added).

In sum, the NYHRL does not preclude employers from taking adverse employment action against applicants or employees based upon an arrest record if another statute "specifically requires or permits" it to do so. The FDIA "specifically requires or permits" BANA, an FDIC-insured, nationally-chartered bank, to not hire individuals who have been arrested and/or charged with crimes of dishonesty, even if those charges were subsequently dismissed. Accordingly, Plaintiff cannot state a claim for relief against BANA under NYHRL § 296(16) and her claim must be dismissed with prejudice.

## III.   PLAINTIFF'S CLAIMS FOR RELIEF UNDER THE NYHRL ARE PREEMPTED BY FEDERAL LAW

Even if Plaintiff had alleged that the Bank discriminated against her because of a criminal conviction, or if the Bank were not otherwise "specifically required or permitted by statute" to refuse to hire or employ Plaintiff based upon her arrest and criminal accusation for a crime of dishonesty, Plaintiff's claims, premised solely on New York state law, still fail as a matter of law because they are preempted by federal law.

### A.   Governing Preemption Principles.

Federal preemption of state laws "is rooted in the Supremacy Clause of the United States Constitution, which provides that "the Laws of the United States … shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby, any Thing in the Constitution or the Laws of any State in the Country notwithstanding." *Pac. Cap. Bank, N.A. v. State of Connecticut*, 542 F.3d 341, 351 (2d Cir. 2008) (quoting U.S. Const. art VI, cl. 2). Federal preemption occurs where, as here, "federal law conflicts with state law." *Id*. (citations omitted). Specifically, "[c]onflict preemption … occurs when ... the state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Id*. (citations and internal marks omitted).

"State law is in 'irreconcilable conflict' with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." *Id*. (quoting *Rice v. Norman Williams Co*., 458 U.S. 654, 659 (1982), and citing *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996)). Accordingly, "in order for conflict preemption to apply, the activity that is forbidden by state law need not be required by federal law; *it is sufficient that the activity that state law prohibits is federally authorized*. *Id*. at 351-52 (emphasis added, citing *Barnett Bank*, 517 U.S. at 31) (a federal statute permitting, but not requiring, national banks to sell insurance in small towns preempts a state statute forbidding them to do so); *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373, 375-79 (1954) (federal statutes permitting, but not requiring, national banks to receive savings deposits preempt a state statute prohibiting national banks from using the word "savings" in their advertising)).

**B.    NYHRL §§ 296(15) And 296(16) Conflict With Section 19 Of The FDIA.**

As discussed above, BANA is an FDIC-insured, nationally-chartered bank, and is therefore subject to the FDIA. Section 19 of the FDIA *prohibits* the Bank from hiring or employing anyone who has been convicted of a "criminal offense involving dishonesty" or who has been charged with a crime involving dishonesty who "has agreed to enter into a pretrial diversion or similar program in connection with a prosecution," without the prior written consent of the FDIC. 12 U.S.C. § 1829(a)(1). If the Bank knowingly violates Section 19 (by, for example, hiring Plaintiff or any other person it knows to have been charged with a crime of

dishonesty), it could be subject to a fine of up to *$1 million per day* and/or up to five years in prison.  12 U.S.C. § 1829(b).[8]

Contrary to Section 19 of the FDIA, NYHRL §§ 296(15) and 296(16) purport to prohibit employers – including FDIC-insured national banks – from taking any adverse action against a person based upon criminal convictions and past criminal accusations that were terminated "in favor of such individual" as defined in the NYCPL.[9]  To accept Plaintiff's view, the NYHRL *prohibited* the Bank from rescinding its offer of employment to Plaintiff based upon her arrest and ACD, and would have prohibited the Bank from rescinding its offer even if Plaintiff had been convicted.

This presents a classic scenario of conflict preemption because, in order for the Bank to comply with the provisions of the NYHRL apparently invoked by Plaintiff here, it would have to violate is obligations under (and therefore frustrate the purpose of) Section 19 of the FDIA.  As

---

[8] Section 19 provides in pertinent part:

(a)  Prohibition
    (1)  In general.  Except with the prior written consent of the Corporation --
        (A)  any person who has been convicted of any criminal offense involving dishonesty or a breach of trust or money laundering, or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not --
            (i)  become, or continue as, an institution-affiliated party with respect to any insured depository institution; [or]
                ***
            (iii)  otherwise participate, directly or indirectly, in the conduct of the affairs of any insured depository institution; and
        (B)  any insured depository institution may not permit any person referred to in subparagraph (A) to engage in any conduct or continue any relationship prohibited under such subparagraph.
(b)  Penalty
Whoever knowingly violates subsection (a) of this section shall be fined not more than $1,000,000 for each day such prohibition is violated or imprisoned for not more than 5 years, or both.

12 U.S.C. § 1829(a).

[9] NYCPL § 160.50 defines an ACD pursuant to NYCPL §170.55 as a termination of a criminal accusation in the accused's favor.  NYCPL § 160.50(3).

emphasized above, conflict preemption applies when the activity prohibited by state law – here, rescinding Plaintiff's employment offer – is federally authorized and permitted. *See Pac. Cap. Bank*, 542 F.3d at 351-52; *see Barnett Bank*, 517 U.S. at 31 (a federal statute permitting, but not requiring, national banks to sell insurance in small towns preempts a state statute forbidding them to do so); *Franklin National Bank*, 347 U.S. at 375-79 (federal statutes permitting, but not requiring, national banks to receive savings deposits preempt a state statute prohibiting national banks from using the word "savings" in their advertising).[10]

The only court decision specifically addressing Section 19 preemption in a similar context as Plaintiff's claims held that Section 19 preempted a local law similar to NYHRL § 296(16). *See Sells-Lawrence v. Chase Manhattan Bank, N.A.*, 2002 U.S. Dist. LEXIS 4346, *5-9 (D. V.I. 2002) (Section 19 preempted a claim brought under the Virgin Islands Wrongful Discharge Act). Plaintiff's Complaint therefore fails to state a claim under the NYHRL because any such claim is completely preempted by Section 19 of the FDIA.

## IV. EVEN IF PLAINTIFF COULD SOMEHOW STATE A COGNIZABLE CLAIM FOR INDIVIDUAL RELIEF, THE CLASS ALLEGATIONS SHOULD BE DISMISSED AND/OR STRICKEN BECAUSE PLAINTIFF HAS FAILED TO PLEAD A CLAIM FOR CLASS-WIDE RELIEF

Even if Plaintiff could somehow state a cognizable claim for individual relief, her putative class action claims and allegations nevertheless should be dismissed and/or stricken because she has not properly pleaded the essential elements required for certification of a class under FED. R. CIV. P. 23, and cannot do so as a matter of law. Moreover, Plaintiff's putative class allegations fail to satisfy the pleading standards of Rule 8.

---

[10] Indeed, by carving out from its purview those instances where an employer is "specifically required or permitted by statute … to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual," the NYHRL apparently acknowledges the preemptive effect of laws such as Section 19. NY CLS Exec § 296(16).

A. **There Is No Reasonable Possibility That Plaintiff Can Satisfy The Elements Of Rule 23.**

FED. R. CIV. P. 23(d)(1)(D) authorizes the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." In addition, FED. R. CIV. P. 23(c)(1) directs district courts to determine "as soon as practicable" whether the proposed class satisfies Rule 23's requirements. Therefore, it is entirely appropriate for the Court to examine Plaintiff's allegations and determine at this stage whether Plaintiff can proceed with her putative class action claims.

1. **No Commonality Exists As A Matter Of Law.**

Plaintiff purports to bring this action on behalf of "a class of persons who (1) have applied for employment with, or were employed by, Defendants in New York State, and (2) had an unlawful adverse employment action taken against them by Bank of America at any time between December 30, 2008 and the present (3) because of their arrest record and/or criminal history." (Compl., ¶ 15). This class definition, taken together with the allegations of the Complaint and the nature of the claims, conclusively establish that individualized issues of law and/or fact necessarily will predominate in this action, thereby justifying the Court to dismiss or strike the class allegations.

As the Supreme Court recently held in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) ("Dukes"), "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' This does not mean merely that they have all suffered a violation of the same provision of law .... Their claims must depend upon a common contention .... That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Thus, "'[w]hat matters to class

16

certification … is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'"  *Id.* (citation omitted).

In this case, even assuming the validity of Plaintiff's legal theory, individual issues will necessarily predominate over common questions.  Claims under the NYHRL are multi-faceted and evaluated according to the *McDonnell-Douglas* burden-shifting scheme traditionally used in employment discrimination lawsuits.  *See Ferrante v. Am. Lung Ass'n*, 90 N.Y.2d 623, 629-30 (2007) (citing *McDonnell Douglas v. Green,* 411 U.S. 792 (1973) and holding that its burden-shifting scheme is "in accord with" the "standards for recovery under section 296 of the Executive Law").  Under this form of analysis, Plaintiff (and any putative class member) will have to present individualized evidence of a *prima facie* claim of discrimination.  *Id.* at 629.  If they are able to do so, the Bank will then present individualized evidence of its legitimate, non-discriminatory reason for not hiring or terminating the employment of Plaintiff (or the putative class member).  *Id.* at 629-30.  Finally, the burden shifts back to the Plaintiff (or putative class member) to present evidence that the legitimate reasons proffered by the Bank are pretext for discrimination.  *Id.*  This is an inherently individualized analysis that can simply not be performed on a class-wide basis.

It is readily apparent from the face of the Complaint and the nature of the claims Plaintiff has asserted that in order to resolve Plaintiff's putative class action claims, the Court would have to engage in multiple individualized inquiries as to Plaintiff and each individual class member that would prevent Plaintiff from obtaining certification of the proposed class.  Thus, because Plaintiff's putative class action claims raise individualized inquiries that will generate

17

individualized answers, as a matter of law, Plaintiff will not be able to ever satisfy the commonality element of FED. R. CIV. P. 23.

### 2.    Plaintiff Has Failed to Plead an Ascertainable Class.

For a class to be certified, there must be an ascertainable class – *i.e.*, a class whose members can be identified without individual trials on the merits.  *See, e.g., Meyers v. Crouse Health Sys.*, 274 F.R.D. 404, 416 (N.D.N.Y. 2011); 5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001) ("The identity of class members must be ascertainable by reference to objective criteria.").  A class definition is inadequate if it "begs the very legal question at issue in [the] case."  *De La Cruz v. Gill Corn Farms, Inc.,* 2005 U.S. Dist. LEXIS 44675 (N.D.N.Y. 2005); *see also Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D. Ind. 1997) (Where "a decision on the merits of a person's claim is needed to determine whether a person is a member of a class, the proposed class action is unmanageable virtually by definition"); *Bostick v. St. Jude Med., Inc.*, 2004 U.S. Dist. LEXIS 29997, *48-49 (W.D. Tenn. 2004) ("The requirement of ascertainability 'is not satisfied when the class is defined simply as consisting of all persons who may have been injured by some generically described wrongful conduct allegedly engaged in by a defendant'" because to establish who belongs in the class, the court would have to "conduct 'mini-trials on the merits'.") (citation omitted).

Here, Plaintiff's putative class definition is inherently unascertainable.  A determination of whether any individual had an "unlawful adverse employment action" taken against them "begs the very legal question at issue in the case."  *De La Cruz, supra.*  Moreover, the Complaint does not even attempt to suggest how the Bank (or the Court) could even begin to identify who is a putative class member short of individually examining the personnel file of every person since December 30, 2008 who either (a) applied for work with the Bank since December 30, 2008 but

18

was turned down, or (b) worked for the Bank but was terminated (or had another "adverse employment action" taken against them).

In addition, the putative class definition is overbroad and defective on its face.  It is overbroad because it includes *all* applicants and employees for *all* positions within the Bank who were denied employment because of arrest or conviction records.  In addition to the provisions of the FDIA that govern the Bank's hiring practices, there are numerous other federal laws that regulate the Bank's hiring and firing of employees.  For example, the National Bank Act, 12 U.S.C. § 24 (Fifth) (the "NBA"), authorizes national banks to dismiss certain employees "at pleasure."  The "at pleasure" language of the NBA has long been recognized to preempt state laws that purport to impose stricter requirements, such as the NY HRL.  In addition, the Secure and Fair Enforcement for Mortgage Licensing Act (the "SAFE Act") prohibits people with certain criminal convictions from becoming licensed or holding certain positions within the mortgage industry.  *See* 12 U.S.C. §5104(b)(2).  This federal law would also preempt the NY HRL with regard to any purported regulation of the Bank's hiring practices as it pertains to those employees covered by the SAFE Act.

### B.     The Class Allegations Fail To Satisfy FED. R. CIV. P. 8.

In addition to Plaintiff's class definition being defective on its face and the nature of the claims necessarily precluding a finding of commonality under FED. R. CIV. P. 23, Plaintiff also has failed to satisfy the pleading requirements of FED. R. CIV. P. 8 in connection with her class action allegations, requiring their dismissal.

Since *Twombly* and *Iqbal* were decided, courts have recognized that employment class action plaintiffs must also comply with the same minimum pleading requirements under  FED. R. CIV. P. 8(a) in order to survive a FED. R. CIV. P. 12 motion and proceed to class discovery.  *See*, *e.g.*, *Deleon v. Time Warner Cable, LLC*, 2009 U.S. Dist. LEXIS 74345, *6 (C.D. Cal. 2009);

*Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628-30 (S.D.N.Y. 2007).  In other words, ***all*** of the material allegations of a complaint, including those related to class action treatment, must contain sufficient factual allegations for the Court to be able to determine that a plaintiff is entitled to move forward and subject a defendant to the rigors, burdens, and costs of the discovery that typically ensues in a putative class action lawsuit.  Thus, the need for enforcement of these pleading requirements is particularly important in the context of a putative class action like this one.  Without the courts acting as gatekeepers, any employee who claims to have suffered even a single, isolated violation could simply allege, without any plausible basis or information, that some vague "policy" or "procedure" exists, and that it is applied to a putative class of people about whom the plaintiff has no knowledge or information whatsoever.  In doing so, such a plaintiff would needlessly subject the defendant to the burden and expense of litigating a class action, unless the Court steps in, as it should here, to require that FED. R. CIV. P. 8 and the *Twombly* and *Iqbal* pleading standards are followed to prevent such abuses.

This is precisely the situation here.  Plaintiff's Complaint is littered with conclusory allegations about the alleged policy and practice and recitations of the Rule 23 requirements, but few, if any, facts pertaining to any purported class, and none to support a "plausible" basis for class-wide claims.  *See Iqbal*, *supra,* 129 U.S. at 1949 ("a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555).  Plaintiff's Complaint asserts only four allegations about the alleged class-wide policy.  (Compl., ¶¶ 52-55).

*First*, the Complaint alleges that the alleged "policy and practice" here is "evidenced by the September 16 and September 27, 2011 letters from Bank of America to Ms. Smith …" (Compl., ¶ 52).  But Plaintiff has not alleged any facts that plausibly suggest that the Bank has a policy or practice of imposing overbroad background checks or refusing to consider applications

due to criminal conduct.  Rather, as discussed above, the letters and the governing federal regulations demonstrate that the FBI is authorized to conduct background checks for the Bank and that it did so with regard to Plaintiff consistent with its federal regulatory authority. Moreover, the letters demonstrate that the Bank *individually* reviewed Plaintiff's application and discovered that Plaintiff was charged with a crime of dishonesty and then had that charge dismissed pursuant to an ACD under NYCPL §170.55.  The Bank then based its decision on Plaintiff's specific and individualized circumstance.  *See* McCarthy-Lopez Decl., Exh. 5.  In other words, Plaintiff's class action allegations are completely inconsistent with and contradicted by the documents upon which her claims are based.  This alone is sufficient to warrant striking the class action allegations.  *See Colabella v. AICPA*, 2011 U.S. Dist. LEXIS 110982, *15 n.7 (E.D.N.Y. 2011) ("if documents deemed to be part of the complaint contradict the complaint's allegations, the documents control …") (citation omitted).

*Second*, Plaintiff alleges that the Bank "follows certain guidelines in dealing with appeals respecting adverse employment actions taken due to a person's criminal history."  (Compl., ¶ 53).  As explained above, the Bank is heavily regulated by federal law.  Its employment decisions are governed by Section 19 of the FDIA.  Its mere use of guidelines to comply with one of its many federally-regulated obligations does not suggest illegal discrimination.  *See Twombly*, 550 U.S. at 567 (parallel conduct with "an obvious alternative explanation" did not allege a plausible antitrust conspiracy claim).

*Third*, Plaintiff alleges that some unspecified "employee in Bank of America's 'Corporate Security' division" informed her that the Bank has a policy of "not hiring persons who have been arrested within the past five years."  (Compl., ¶ 53).  This vague allegation is inconsistent with the Bank's actual treatment of Plaintiff as evidenced by the letters discussed

21

above.  Those letters do not state, suggest, or indicate that Plaintiff's employment was rescinded simply because she had been arrested within the past five years.  Rather, consistent with Section 19 of the FDIA, those letters demonstrate that the decision was based on her having been arrested and charged with a *crime of dishonesty* and then only had those charges dismissed pursuant to pre-trial diversion or similar program.   This statement should therefore be disregarded because it is not entitled to any presumption of truth.  *See Fieck*, 653 F.2d at 75; *Colabella*, at *15 n.7.  At the very least this inconsistent allegations is insufficient to support a plausible class claim.[11]

*Finally*, the Complaint alleges that "Bank of America is widely known, according to published reports and investigations by nonprofit organizations, to (1) impose overbroad background checks, (2) refuse to consider applications due to their criminal conduct, and (3) refuse to consider candidates who have been convicted of crimes without regard to the nature of the crime or the timing of the conviction."   (Compl., ¶ 54).   These are exactly the sort of unsupported "labels and conclusions" and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient to assert a plausible claim for relief.  *See Iqbal*, 129 U.S. at 1949 (quoting *Twombly*, 550 U.S. at 555).

---

[11]   Moreover, this statement does not plausibly suggest an illegal policy because it is not necessarily inconsistent with a lawful application of the FDIC's *de minimus* exception Section 19 of the FDIA.  The FDIC does not require applications for approval to employ individuals who committed only *de minimus* offenses.  The multi-part definition of a *de minimus* offense includes that the "conviction or [pretrial diversion or other similar] program was entered at least five years prior to the date an application would otherwise be required."   63 Fed. Reg. at 66,185.   In the words of *Twombly*, one "obvious alternative explanation" for this statement is that Plaintiff misunderstood or did not comprehend what the alleged speaker actually said.  550 U.S. at 567.  Plaintiff should not be entitled to "unlock the doors of [class] discovery" the basis of a single statement that is inconsistent with the Bank's treatment of her individual situation.  *Twombly*, 556 U.S. at 1950.

Those four allegations represent the sum total of Plaintiff's class allegations.  For the reasons explained above, none of these statements individually or collectively state a plausible policy or practice susceptible to class claims.

In sum, Plaintiff's bald assertion of a pattern and practice relating to arrest and conviction records fails to recognize the context of her claims:  multi-faceted, individualized decisions subject to fact-specific defenses, within a heavily federally regulated industry, subject to multiple specific federal laws governing employment procedures generally and arrest and conviction records in particular.   Against this backdrop, Plaintiff's paltry class allegations – which contradict the documents her claims rely on – do not in this context plausibly suggest that Bank of America employs an illegal background check policy or procedure.   Therefore, even if Plaintiff's individual claims somehow survive, the class allegations should nevertheless be stricken.

## CONCLUSION

For all reasons explained above, Plaintiff's NYHRL § 296(15) claim should be dismissed with prejudice and without leave to amend because she has never been convicted of a crime. Plaintiff's NYHRL § 296(16) claim should be dismissed because the plain language of that statute permits the Bank to engage in precisely the conduct that Plaintiff now alleges is illegal. Further, both claims should be dismissed with prejudice and without leave to amend because they are preempted by federal law.   Finally, to the extent the Court does not dismiss Plaintiff's individual claims for relief with prejudice, it should nevertheless dismiss her class claims and strike the class allegations because Plaintiff has not pleaded—and cannot as a matter of law plead—any proper basis for class-wide relief.

23

Dated: February 17, 2012

**McGUIREWOODS LLP**


By:    s/ Philip A. Goldstein_____
       Philip A. Goldstein (PAG-0908)
       *pagoldstein@mcguirewoods.com*
       1345 Avenue of the Americas, 7th Floor
       New York, New York 10105-0106
       (212) 548-2100


\37107571.5