FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 18 2012 ★
BROOKLYN OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

JENNIFER SMITH,

        Plaintiff,

- against -

BANK OF AMERICA CORP., BANK OF AMERICA, N.A.,

        Defendants.

**MEMORANDUM, ORDER, AND JUDGMENT**

11-CV-6368

**Appearances:**

For the Plaintiff:

    Douglas H. Wigdor
    Lawrence M. Pearson
    Thompson Wigdor LLP
    New York, NY

For the Defendants:

    Philip A. Goldstein
    McGuireWoods LLP
    New York, NY

**JACK B. WEINSTEIN, Senior United States District Judge:**

Table of Contents

I. Introduction ........................................................................................... 2
II. Factual Allegations and Procedural History ........................................ 3
III. Law ..................................................................................................... 4
    A. Rule 12(b)(6) Standard ............................................................... 5
    B. Adjournment in Contemplation of Dismissal ............................. 5
    C. Relevant Provisions of New York Human Rights Law .............. 6
    D. Applicable Federal Banking Law ............................................... 7
IV. Application of Law to Facts ............................................................... 9
    A. Section 296(15) of New York's Executive Law ......................... 9
    B. Section 296(16) of New York's Executive Law ......................... 9

1



V. Conclusion .................................................................................................. 13

I.  **Introduction**

In this case a federal statute frustrates New York's much-admired adjournment in contemplation of dismissal ("ACD") program. The ACD process is designed to avoid persons charged with minor offenses being permanently designated as criminals. It provides a second chance for a lawful life. The federal statute mandated the defendant bank's refusal to hire plaintiff because of a shoplifting prosecution that was nullified by an ACD. Otherwise, it would have employed her. The federal statute and its administration should be revised to bring them into line with the highly laudable state policy.

Plaintiff Jennifer Smith sues defendants Bank of America Corporation and Bank of America, N.A. (collectively, "Bank of America"). Jurisdiction is premised on diversity of citizenship. *See* 28 U.S.C. § 1332. Ms. Smith contends that she was discriminated against by Bank of America, in violation of New York law, when an offer of employment was withdrawn after a background check revealed that she had been arrested and charged with petit larceny.

She had been offered—and rather than go to trial, accepted—an ACD. Her conduct was appropriate and noncriminal during the adjournment period, so the case was dismissed and the record stricken.

Her state criminal attorney did not inform her of the adverse collateral consequences of an ACD respecting future employment. Nor was she told of her right to apply for a waiver of the federal bar from the agency that administers the federal statute. *See* May 14, 2012 H'rg Tr. These were serious omissions by counsel. *Cf. Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) (counsel was constitutionally ineffective for failing to inform defendant of automatic deportation that would follow guilty plea). A preferred practice would be to have the protection against

adverse collateral consequences operate automatically. *Cf.* Model Penal Code: Sentencing § 6.02A(11) (Discussion Draft No. 4, Apr. 16, 2012) (automatic application). The ability to earn a living is an important factor in avoiding criminality. The present federal rule unnecessarily excludes from the economy and tax-base people who would make a useful contribution to society.

Plaintiff sues Bank of America on behalf of all others similarly situated. She seeks to have a class certified. *See* Fed. R. Civ. P. 23. The defendants have moved to dismiss the complaint. *See* Fed. R. Civ. P. 12(b)(6). For the reasons stated below, defendants' motion to dismiss the complaint is granted. The applicable federal law does not allow for the hiring of this plaintiff by the defendants, even though she has been deemed rehabilitated under New York law and is without a criminal record.

## II. Factual Allegations and Procedural History

Plaintiff, a resident of Nassau County, New York, worked as a temporary employee at Bank of America's Melville, New York office from February 2009 to September 2011. *See* Complaint ("Compl.") ¶ 10, *Smith v. Bank of America Corp. et al.*, No. 11-CV-6368 (E.D.N.Y. Dec. 30, 2011), CM/ECF No. 1. She held a number of positions as a temporary employee at Bank of America; at the time she sought permanent employment, she was working as a mortgage coordinator. *See id.* ¶ 36. In this position, Ms. Smith assisted in Bank of America's loan production; her responsibilities included providing assistance to customers and ensuring that paperwork was correctly processed. *See id.*

According to plaintiff, she was encouraged by her supervisor to apply for full-time employment at Bank of America. She states that before doing so, she informed her supervisor that she had been arrested and charged with petit larceny, but that the charges had been

3

dismissed after an ACD. *See* N.Y. Crim. Proc. Law § 170.55. She states that she was assured by the bank that the incident would not hinder her chances of obtaining full-time employment. *See* Compl. ¶¶ 39-42.

On September 9, 2011, she was offered the position. *See id.* ¶ 43. She was sent a congratulatory email and an offer of employment; the offer was promptly accepted. *See id.* ¶¶ 44-45. Ms. Smith was to begin full-time employment in late September. *See id.* ¶ 45.

In mid-September 2011, plaintiff received a letter from Bank of America's regional manager responsible for criminal screening. She was informed that she was not eligible to be considered for employment because of information regarding her criminal history obtained from a Federal Bureau of Investigation ("FBI") background check. *See* Decl. of Lori A. McCarthy Lopez ("Lopez Decl.") 13, Smith v. Bank of America Corp. et al., No. 11-CV-6368 (E.D.N.Y. Feb. 17, 2012), CM/ECF No. 11-4. The letter and its attachments stated—accurately—that plaintiff had been arrested and charged with petit larceny in April 2010; no other illegal activity was listed. *See* Compl. ¶¶ 46-47.

Ms. Smith was informed that she had the right to challenge the background check if she believed it to be inaccurate. *See* Lopez Decl. 13 (citing Procedure to Obtain Change, Correction or Updating of Identification Records, 28 C.F.R. § 16.34 (2011)). She did so, explaining that the charges against her had been dismissed after the ACD. Plaintiff also provided documentation of the dismissal and correspondence from her attorney that confirmed that the charge had been dismissed. *See id.* ¶¶ 48-49. Bank of America refused to change its decision. *See id.* ¶ 50.

Contending that defendants' refusal to hire her violated New York antidiscrimination law, Ms. Smith initiated this litigation by filing a complaint in December 2011.

**III.  Law**

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss made pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 135 (2d Cir. 2011) (internal quotation marks omitted). Determining whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted).

A court ruling on a 12(b)(6) motion is to "accept as true the facts alleged in the complaint, and may consider documents incorporated by reference in the complaint and documents upon which the complaint relies heavily." *In re Citigroup*, 662 F.3d at 135 (internal quotation marks omitted). All reasonable inferences are drawn in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### B. Adjournment in Contemplation of Dismissal

New York's criminal procedure law provides that certain types of cases may be dismissed in furtherance of justice using the ACD procedure. Section One of the applicable provision states that:

> Upon or after arraignment in a local criminal court upon an information, a simplified information, a prosecutor's information or a misdemeanor complaint, and *before entry of a plea of guilty thereto or commencement of a trial thereof, the court may,* upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, *order that the action be "adjourned in contemplation of dismissal,"* as prescribed in section two.

N.Y. Crim. Proc. Law § 170.55(1) (emphasis added).

Section Two reads:

> An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory

5

instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application of the people, made at any time not more than six months . . . after the issuance of such order, the court may restore the case to the calendar upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice, and the action must . . . proceed. *If the case is not . . . restored within such six months . . . , the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.*

*Id.* § 170.55(2) (emphasis added).

The statute requires that the arrest and prosecution leading to the ACD "be deemed a nullity." *Id.* § 170.55(8). The "granting of an adjournment in contemplation of dismissal *shall not be deemed to be a conviction or an admission of guilt. No person shall suffer any disability or forfeiture as a result of such an order.* Upon the dismissal of the accusatory instrument . . . , *the arrest and prosecution shall be deemed a nullity* and the defendant *shall be restored, in contemplation of law, to the status he occupied before his arrest and prosecution.*" *Id.* (emphasis added).

"The purpose of the statutory ACD procedure was to provide a shield against the criminal stigma that would attach to a defendant accepting such an adjournment." *Lancaster v. Kindor*, 471 N.Y.S.2d 573, 579 (N.Y. App. Div. 1984).

### C. Relevant Provisions of New York Human Rights Law

New York's Human Rights Law (the "NYSHRL") limits the ability of employers to make employment decisions adverse to employees or job applicants on the basis of criminal history. The statute provides protection even after conviction, based on a public policy of welcoming those formerly convicted back into the labor force. Reentry of those convicted is an essential goal of New York criminal law. The statute provides in part:

> It shall be an unlawful discriminatory practice for any person, agency, bureau, corporation or association, including the state or any political subdivision thereof, to deny any license or employment to any individual by reason of his or her

6

having been convicted of one or more criminal offenses, or by reason of a finding
of a lack of "good moral character" which is based upon his or her having been
convicted of one or more criminal offenses, when such denial is in violation of the
provisions of article twenty-three-A of the correction law.

N.Y. Exec. Law § 296(15).

The NYSHRL also limits the right of employers to consider or ask questions about arrests or criminal charges terminated in an applicant or employee's favor:

It shall be an unlawful discriminatory practice, unless specifically required or
permitted by statute, for any person, agency, bureau, corporation or association,
including the state and any political subdivision thereof, to make any inquiry
about, whether in any form of application or otherwise, or to act upon adversely to
the individual involved, any arrest or criminal accusation of such individual not
then pending against that individual which was followed by a termination of that
criminal action or proceeding in favor of such individual, as defined in . . . section
160.50 of the criminal procedure law . . . .

*Id.* § 296(16). An order entered—or deemed entered—that dismisses the entire accusatory instrument after an ACD is a termination in favor of the accused for this purpose. *See* N.Y. Crim. Proc. Law § 160.50(3)(b). *But cf. Green v. Mattingly*, 585 F.3d 97, 103-04 (2d Cir. 2009) (noting that an ACD is not deemed a favorable termination for purposes of a malicious prosecution claim).

### D. Applicable Federal Banking Law

Federal law deems those banks and savings associations that carry federal insurance on their deposits to be "insured depository institutions." *See* 12 U.S.C. § 1813(c)(2). Employees of insured depository institutions are termed "institution-affiliated parties." *See id.* § 1813(u)(1).

Imposed on banks that carry federal deposit insurance are a number of conditions. Among them is a limitation on the ability of banks to hire individuals who have been accused or convicted of certain crimes.

The statute provides an escape from its rigors by consent of the Federal Deposit Insurance Corporation ("FDIC"). But except "with the *prior written consent* of the [FDIC]," any person "who has been *convicted of any criminal offense involving dishonesty* or a breach of trust or money laundering, *or has agreed to enter into a pretrial diversion or similar program in connection with the prosecution for such offense*, may not . . . become . . . an institution-affiliated party with respect to any insured depository institution." *Id.* § 1829(a)(1)(A)(i) (emphasis added).

The FDIC is empowered to interpret this subsection. *See* 12 U.S.C. § 1819(a). Federal courts will defer to agency interpretations of ambiguous statutes when the interpretation is reasonable, the agency has been empowered to issue interpretations with the force of law, and the agency has so acted. *See, e.g., United States v. Mead Corp.*, 533 U.S. 218, 227-29 (2001); *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984). The agency has declared that 12 U.S.C. § 1829(a)(1)(A)'s reference to "dishonesty" encompasses offenses including the wrongful taking of property belonging to another, in violation of any criminal statute. *See* FDIC Statement of Policy, 63 Fed. Reg. 66,177, 66,185 (Dec. 1, 1998).

In an opinion letter, the FDIC's Division of Supervision and Consumer Protection has stated that the "granting of an ACD [pursuant to Section 170.55 of New York's Criminal Procedure Law] constitutes entry into a pretrial diversion or similar program within the meaning of" 12 U.S.C. § 1829. *See* May 13, 2009 Opinion Letter ("May 2009 Opinion Letter") 1, Smith v. Bank of America Corp. et al., No. 11-CV-6368 (E.D.N.Y. Mar. 26, 2012), CM/ECF No. 23-1. Following the lead of the Supreme Court of the United States, the Court of Appeals for the Second Circuit has stated that an agency's interpretation of law made by way of an opinion letter is not entitled to *Chevron* deference. *See, e.g., Lopez v. Terrell*, 654 F.3d 176, 182 (2d Cir. 2011)

(citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587-88 (2000)). Nevertheless, an agency's interpretation of law made in this fashion is given deference to the extent that the court finds it persuasive. *See, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Estate of Landers v. Leavitt*, 545 F.3d 98, 105 (2d Cir. 2008).

Banks must make reasonable inquiries, pursuant to 12 U.S.C. § 1829, into the backgrounds of potential employees, so as to avoid hiring or permitting participation in their affairs by persons barred from employment by federal law. *See* FDIC Statement of Policy, 63 Fed. Reg. 66,177, 66,182-85 (Dec. 1, 1998). Assistance to federally-insured banking institutions is provided by the FBI, which helps conduct background checks on prospective and current employees. *See* Exchange of FBI Identification Records, 28 C.F.R. § 50.12 (2011).

### IV. Application of Law to Facts

It is not clear from the complaint whether plaintiff's claim is brought pursuant to Section 296(15) or Section 296(16) of New York's Executive Law. *Compare* Compl. ¶ 3, *with id.* ¶¶ 58-61. It does not matter. For the reasons set out below, her claim must be dismissed.

#### A. Section 296(15) of New York's Executive Law

Section 296(15) is inapplicable to this case, since its protections only apply to individuals who have been convicted of crimes. *See* N.Y. Exec. Law § 296(15). Ms. Smith concedes that she has not been convicted of a crime. That was the ground on which her opposition to Bank of America's decision to rescind her offer of employment was founded. *See* Compl. ¶ 49; *see also* Lopez Decl. 5-6. She therefore cannot recover under Section 296(15).

#### B. Section 296(16) of New York's Executive Law

Whether plaintiff's complaint sufficiently states a claim under the NYSHRL pursuant to Section 296(16) presents a somewhat more complicated question. The answer depends on the

interplay between the NYSHRL, the federal banking statute, and the FDIC's pronouncements regarding that statute's meaning.

The NYSHRL provides in relevant part that it "shall be an unlawful discriminatory practice, *unless specifically required or permitted by statute*, for any ... corporation or association ... to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation not then pending against that individual which was followed by a termination of *that criminal action or proceeding in favor of such individual*." N.Y. Exec. Law § 296(16) (emphasis added). It is undisputed that Bank of America "act[ed] ... adversely" to Ms. Smith because of the dismissed charge; her offer of employment was revoked because of it. *See* Compl. ¶¶ 46-47; *see also* Lopez Decl. 13. Dismissal of the charge against plaintiff after the ACD was a termination in her favor. *See* N.Y. Crim. Proc. Law § 160.50(3)(b).

The critical issue in resolving the instant motion is whether Bank of America's refusal to hire plaintiff is protected by the NYSHRL's exception—*i.e.*, whether the refusal to hire was "required or permitted by statute." *See* N.Y. Exec. Law § 296(16).

As noted in Part III.D, *supra*, federal law prohibits insured banks—except with the prior written consent of the FDIC (not relevant here, since there has been no suggestion that the FDIC's consent was ever sought)—from hiring as an employee any person who "has agreed to enter into a pretrial diversion or similar program in connection with the prosecution of" any criminal offense involving dishonesty, a breach of trust, or money laundering. *See* 12 U.S.C. § 1829(a)(1)(A)(i). Plaintiff claims that she did not apply for a waiver from the FDIC because she did not know that she could do so. *See* May 14, 2012 H'rg Tr.; *see also* Part I, *supra*

(discussing defense counsel's failure to inform plaintiff of the consequences of accepting an ACD).

Presented by the federal statute are two legal questions that must be resolved to determine whether Bank of America's refusal to hire Ms. Smith satisfied the exception in Section 296(16). First, does New York's ACD program constitute a "pretrial diversion or similar program" within the meaning of 12 U.S.C. § 1289? (If this question is answered in the negative, then Bank of America cannot use Section 1289 as a shield in this litigation.) Second, if New York's ACD program is a "pretrial diversion or similar program," was the crime with which plaintiff was charged one involving "dishonesty?" (If the answer is no, then Section 1289 affords Bank of America no protection.) Since, as explained below, both questions must be answered in the affirmative, the defendants did not violate New York law in refusing to hire Ms. Smith; they were required by federal law not to do so.

The FDIC has already attempted to answer the first query set out above by way of the May 2009 Opinion Letter referenced in Part III.D, *supra*. In that letter, the agency concluded that the "granting of an ACD constitutes entry into a pretrial diversion or similar program within the meaning of" 12 U.S.C. § 1829(a)(1)(A). *See* May 2009 Opinion Letter 1. And the FDIC has opined—in a statement published in the Federal Register—that a "pretrial diversion or similar program" is "characterized by a suspension or eventual dismissal of charges or criminal prosecution upon agreement by the accused to treatment, rehabilitation, restitution, or other noncriminal or nonpunitive alternatives." FDIC Statement of Policy, 63 Fed. Reg. 66,177, 66,184-85 (Dec. 1, 1998). The agency did note in that statement, however, that whether "a program constitutes a pretrial diversion . . . will be considered by the FDIC on a case-by case-basis," *id.* at 66,185; hence, the May 2009 Opinion Letter.

Neither of these sources of authority is sufficient to provide an answer to the first question. The May 2009 Opinion Letter is insufficient—to the extent that it is an interpretation of law, as opposed to the application of law to fact—since it is only eligible for limited *Skidmore* deference. *See* Part III.D, *supra*. And since the FDIC's Federal Register statement expressly declined to opine on particular programs, the agency cannot be said to have addressed New York's ACD program in that pronouncement.

The agency's suggested legal interpretation of Section 1289 in the May 2009 Opinion Letter, however, is correct; New York's ACD program is a "pretrial diversion or similar program" within the meaning of 12 U.S.C. § 1289(a)(1)(A). The ACD program allows for the dismissal of relatively minor criminal charges in the interests of justice. *See* N.Y. Crim. Proc. Law §§ 170.55(1)-(2). New York courts are empowered to impose various nonpunitive conditions on the entry of an ACD, *see id.* §§ 170.55(5)-(7), and the granting of an ACD is deemed not to be a conviction or an admission of guilt. *See id.* § 170.55(8). The granting of an ACD in favor of plaintiff, resulting in dismissal of the charge brought against her, therefore constituted entry on Ms. Smith's part into a pretrial diversion program. *See* May 14, 2012 H'rg Tr. Thus, if the crime of which Ms. Smith was accused was one of "dishonesty," then Bank of America acted lawfully in refusing to hire her because of the criminal charge.

The answer to the second question—whether the crime with which Ms. Smith was charged was one of "dishonesty"—has already effectively been provided by the FDIC's construction of Section 1289. The agency has concluded that crimes of dishonesty include those in which the defendant is accused of wrongfully taking property from another in violation of any criminal statute. *See* FDIC Statement of Policy, 63 Fed. Reg. 66,177, 66,185 (Dec. 1, 1998).

Deference under *Chevron* is appropriate with respect to this interpretation. *See United States v. Mead Corp.*, 533 U.S. 218, 227-31 (2000).

The crime of which Ms. Smith was accused—petit larceny, *see* Lopez Decl. 6—qualifies as a crime of dishonesty pursuant to the agency's interpretation of the statute. Under New York law, a "person is guilty of petit larceny when he steals property." N.Y. Penal Law § 155.25. Bank of America was therefore required by federal law—specifically, 12 U.S.C. § 1289—not to hire plaintiff after being informed of the results of her background check. It did not violate Section 296(16) by refusing to hire her in the absence of a waiver by the FDIC.

The same result would obtain with respect to the second question even if *Chevron* deference is not due to the FDIC's interpretation of the statutory term; its interpretation is persuasive under *Skidmore*. *See* Part III.D, *supra*.

## V. Conclusion

Defendants' motion to dismiss the complaint is granted. No costs or disbursements are granted to the defendants.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: May 17, 2012
Brooklyn, New York

13